MILLER, Judge.
Plaintiffs Charles Weckerling, Leo Zinc and others seek to rescind a June 3, 1960 sale to defendants David D. and T. H. Davidge, of their “undivided interest” in four tracts which make up a total of approximately 640 acres of Calcasieu Parish land. Defendants reconvened seeking damages for plaintiffs’ failure to comply with a counterletter executed simultaneously with the deed. Plaintiffs’ original attorney Frank C. Moran, Jr. intervened seeking recognition of his 25% interest in plaintiffs’ property in accordance with his employment contract.
The trial court upheld the conveyance and awarded defendants $2,621.61 as damages under the reconventional demand. Moran’s 25% interest in plaintiffs’ property (recon-veyed or to be reconveyed in accordance with the counterletter) was recognized. There was no appeal from the recognition of Moran’s 25% interest.
Plaintiffs contend that they signed the June 3, 1960 sale because of error or mistake and that there was inadequate consideration to support the sale. The trial court correctly found for defendants on this issue.
Plaintiffs further contend that the trial court erred in awarding the Davidges $2,-621.61 in damages. We set aside this award.
In 1959 the Davidges acquired an undivided one-half interest in some 640 acres located in Calcasieu Parish. They set about to amicably acquire the remaining interests. They employed counsel to examine the title and learned that four separate tracts of land (which made up the 640 acres) were acquired by the Weckerling family in 1878. From that date until 1959 when the Davidges acquired their interest, the properties remained in the Weckerling family. There were numerous successions and various owners died leaving their interest to others. None of the successions were recorded in Calcasieu Parish where the property is located. Additionally, there were about eight conveyances of interest among the Weckerling heirs. The taxes were paid from time to time by different members of the family, and some owners never paid taxes. Although most owners knew that they owned an interest in the property, they did not know their percentage of ownership. Additionally, it was discovered that some parties who had no ownership in the property were claiming an interest in it. Tr. 196-8.
On March 10, 1960 when the Davidges found that they could not amicably purchase all the undivided interests in the property, they filed suit in Calcasieu Parish to partition the property by licitation. Additionally they sought to remove clouds^on the title placed by those who had no interest therein.
*549 On May 28, 1959, plaintiffs signed a contract with Frank C. Moran, Jr., attorney at law, employing him to represent them for a twenty-five (25%) percent interest “in our claims” relating to the 640 acres in Calcasieu Parish.
Moran was contacted over fifty times by one or more of his clients before the June 3, 1960 sale and counterletter were executed. There were extensive negotiations between Moran who represented plaintiffs and Davidges’ attorney. Several agreements were submitted by Davidges’ attorney and rejected for one reason or another. On June 3, 1960 plaintiffs and defendants reached agreement and executed (in Moran’s office) a deed conveying plaintiffs’ undivided interest to the Davidges. At the same time a counterletter was executed.
The counterletter is a five page authentic act passed before plaintiffs’ attorney. It recited that the consideration set forth in the deed was not paid; that the true consideration was the agreement set forth in the counterletter; that the Davidges would continue their effort to clear the title and purchase either amicably or as a result of the pending partition suit all undivided interests in the four tracts of land; that if the property was sold as a result of the partition sale, plaintiffs would get paid for their acreage at a rate in excess of $75 per acre or the Davidges would purchase the land; that if the Davidges purchased the land either amicably or at the partition sale, the Davidges would deed to plaintiffs four tracts, one to be selected from any corner of each of the four larger tracts, the corner “to be determined by” plaintiffs, and the acreage to be equally divided among the four tracts. Tr. 171.
The Davidges acquired the other interests in the property for approximately $30 per acre. On May 31, 1962 the Davidges obtained judgment from the 14th Judicial District Court recognizing them to be sole owners of the four tracts having a total acreage of some 640 acres. Tr. 159-70. For this work and costs related thereto (but not including cost of land) the Davidges owed their attorney $5,080.56.
Plaintiffs contend that the following clause in the counterletter was understood by them to apply only to a 99 year lease of timber rights. It provided:
“h. It is specifically agreed, however, that when said tracts of land are conveyed to the sellers, as part consideration thereof and without further payment, the purchasers (Davidges) will be granted a surface lease covering said acreage (the acreage reconveyed to plaintiffs), which will include the right to grow, cut, remove, and in any other way deal with all timber and to use said surface or anything situated on the surface of said land for any purpose or use the said purchasers desire, it being the intention of the parties that the sellers hereby retain for their own benefit any and all mineral rights. Said lease shall be for a term of ninety-nine years from date thereof. During the term of said lease the purchasers will pay the State and Parish taxes on said property.” (Emphasis added).
Each plaintiff that testified admitted that he signed the June 3, 1960 counterletter, but stated that he understood that the 99 year lease applied only to a timber lease.
Plaintiffs’ attorney at the time the coun-terletter was signed testified that he represented them for some time prior to June 3, 1960; that he carefully explained the matter to his clients; that his clients were primarily interested in the mineral rights because their only income from this property had been derived from mineral leases; that his clients were financially unable to bid on the property at a sale which would result from the partition by licitation; that this was the best arrangement that could be salvaged for his clients under the circumstances; and that his clients understood that in the event the Davidges acquired the property, plaintiffs’ future acquisition of specific tracts (which would be four tracts of approximately 20 acres), would be subject to a 99 year surface lease.
*550 The counterletter which is in the form of an authentic act executed by plaintiffs and defendants, plainly states that the Davidges are to retain a 99 year surface lease on lands they reconvey to plaintiffs. Plaintiffs failed to establish that there was either an error of fact or an error of law. The agreement was reached after long negotiations and careful consideration by plaintiffs and their attorney.
Plaintiffs also failed to establish that the consideration was inadequate. Without the agreement, plaintiffs were certain to have the property sold as a result of the partition by licitation. Their share of the property would probably yield approximately $30 an acre against which certain costs of court would be charged. Under the agreement, all costs of court and costs of clearing the title were assumed by the Davidges. If the Davidges acquired the property plaintiffs would receive four separate tracts of land subject only to a 99 year surface lease, but with all the mineral rights. Taxes during the 99 year lease were to be paid by the Davidges. Under the agreement, if the property had to be sold to effect the partition, plaintiffs were assured that either the Davidges would bid it in (and their mineral rights would then be intact) or they would receive at least $75 per acre for their share of the property. The trial court’s decision that the consideration supported the sale is well supported.
By reconventional demand the Davidges prayed for damages totaling $1,850, itemized at Article 26 (Tr. 39) as follows:
“Legal Expenses, phone calls, trips and other miscellaneous expenses in attempting to reconvey property $ 500.00
“Legal expenses in this particular litigation 1,000.00
“Approximate costs outside of legal expenses in this litigation 350.00
TOTAL $1,850.00”
The record supports the trial court’s finding that the Davidges spent much time, effort and money in an effort to get plaintiffs to choose four tracts of land so that the Davidges could reconvey the tracts subject to the Davidges’ 99 year surface lease. For almost three years the Davidges attempted to get plaintiffs to select the tracts. When it became apparent that plaintiffs would not choose any property, the Davidg-es placed of record an instrument conveying four 20 acre tracts which plaintiffs had at one time indicated were acceptable. When the Davidges were unsuccessful in getting the tracts free of the 99 year surface lease, they discharged their attorney Moran and requested that he send the file to another attorney. Moran required that they first pay his fee.
This suit to annul the June 3, 1960 sale was filed on June 2, 1965. When it was called for trial on November 13, 1967, the parties stipulated that they had compromised the case. However, the compromise was not acceptable to all plaintiffs, so the matter was rescheduled for trial.
But plaintiffs refusal to select four tracts of land for reconveyance to them does not support the award of damages to the Davidges. No authority has been cited to support the award of legal and other expenses incurred to enforce the June 3, 1960 counterletter. The Davidges are not entitled to the costs of preparing their defense to plaintiffs’ suit to annul the June 3, 1960 deed. Additionally, the evidence indicates that the Davidges received some income from mineral leases of the entire property after May 31, 1962 when they acquired all the undivided interests in the property, and before April 2, 1964 when they recorded the conveyance of the four 20 acre tracts to plaintiffs. The Davidge testimony was evasive concerning income from mineral leases granted during that period. Tr. 508. Income from plaintiffs’ share of the mineral rights would reduce the Davidge claim.
*551 The award of damages to the Davidges is set aside. The remainder of the trial court judgment is affirmed. Costs of this appeal are assessed to plaintiffs appellants.
Amended and affirmed.